BEFORE THE SECOND DIVISION, NOVEMBER 7, 1946

No. 51393.—Protests 106506–K, etc., of Geo. S. Bush & Co., Inc. (Portland, Oreg.).

TILSON, Judge: These suits are a retrial of the issue before us in *Geo. S. Bush* v. *United States*, Abstract 50589, and involves the proper classification of certain imported merchandise described on the invoices as "Manganese Steel Anchor

Chain Connecting Links for Cargo Vessels." The merchandise was classified by the collector as manufactures of metal, not specially provided for, and duty levied thereon at the rate of 45 percent ad valorem under paragraph 397, Tariff Act of 1930. In his brief filed herein, counsel for the plaintiff, makes the following statement:

* * * Of the various contentions made in the protests those relied upon by plaintiff are founded upon paragraphs 304 and 305.

The pertinent portions of paragraph 304 read as follows:

* * * all descriptions and shapes of dry sand, loam, or iron molded steel castings; sheets and plates and steel not specially provided for; all the foregoing valued * * * above 16 cents per pound, 20 per centum ad valorem.

Paragraph 305 provides that:

In addition to the rates of duty provided for in paragraphs * * * 304 * * * of this schedule, there shall be levied, collected, and paid on all steel or iron in the materials and articles enumerated or described in such paragraphs:

(1) A duty of 8 per centum ad valorem if such steel or iron contains more than one-tenth of 1 per centum of vanadium, or more than two-tenths of 1 per centum of tungsten, molybdenum, or chromium, or more than six-tenths of 1 per centum of nickel, cobalt, or any other metallic element used in alloying steel or iron: * * *

Counsel for the plaintiff concedes that a computation based upon invoice values and weights shows the merchandise herein involved to be valued above 16 cents per pound, and that if it falls within paragraph 304, it is within the 20 percent bracket. Also that manganese is an alloying material to an extent that implicates the additional rate of 8 percent under paragraph 305.

In view of the fact that the merchandise here involved is identical with the merchandise in the *Bush* case, *supra*, the record therein having been admitted in evidence herein, we quote the following from our decision in the latter case:

: At the trial of the case a sample of the merchandise was admitted in evidence, and counsel for the plaintiff offered the testimony of one witness.

Plaintiff's witness testified that the imported articles had been cast; that these articles are used to connect anchor chain shots; that an anchor chain shot varies in length, six anchor chain shots usually making a 90-foot anchor chain; that the diameter of the imported articles was 2¼₆ inches; that these imported articles are not forged; that the imported articles are not parts of an anchor; that these articles are not further processed after importation, except to insert the pin between the links; and that they are used only to connect the various shots of chain that go to make up an anchor chain.

*       *       *       *       *       *       *

A. They are to connect the various shots of chain together that go to make up the chain that an anchor hangs on on a ship.

X Q. Now, is there anything else done to that link or that imported article?—A. No.

*       *       *       *       *       *       *

X Q. You could not use the imported articles, as imported, for anything other than connecting chains, is that correct?—A. No, that is right.

*       *       *       *       *       *       *

R. X Q. Mr. Buckner, on any casting which is removed from the molds it is then sent to the factory, isn't it, or to the firm that makes it to be sold?—A. No.

R. X Q. Is there anything done to it?—A. Yes, sir. You want me to tell you?

R. X Q. Generally, yes.—A. They have to remove the gates and risers and fines [fins].

R. X Q. I see.—A. And then in most cases it has to be some sort of a needling [an annealing] process. It isn't fit for use as it comes from the sand.

R. X Q. Now, was that done in connection with Illustrative Exhibit A?—A. Yes, sir.

R. X Q. And was it done with the imported articles?—A. Yes, sir.

R. X Q. Before they had been imported?—A. Yes, sir.

In the present case plaintiff's witness testified that the imported merchandise was made with a dry sand mold; that he knew that "Because it has the same appearance of the castings we produce by the same method, and I am familiar with the method of castings used by the foundry that produced this." The witness further testified that:

Castings are rough castings which later have to be finished and fitted to make the complete link, and the pin assembled therein. The hole may or may not have to be bored and ground. The casting itself may have to be bent and straightened in order to make the pin fit properly. * * * Frequently it is necessary to grind the inside surfaces of these halves. It is also necessary to grind the holes, the large hole that the pin goes through. It is also necessary to drill out the small holes.

The witness also testified that as imported the merchandise has been brought to a manufactured condition for use exclusively as anchor chain connecting links, and "That is the only purpose to which we have put them"; that the imported article had been made up into a specific article for use by a manufacturing process; "I would say it was a completed article as imported."

The witness also was interrogated and testified as follows:

X Q. Would you say that the imported article had been made up into a specific article for use by a manufacturing process?— A. Yes, I would.

X Q. Would you say that the imported article was a completed one in its condition as imported?— A. Do you mean a casting? You mean as a completed casting?

X Q. I didn't use the word "casting." I used the word "article."— A. *I would say it was a completed article as imported.* It was imported as a casting. [Italics ours.]

X Q. I understand Mr. Buckner testified in the previous case that after these articles are cast, "They have to remove the gates and risers and fins." "And then in most cases it has to be some sort of an annealing process. It isn't fit for use as it comes from the sand", and that all of this was done with the imported articles before importation. That means prior to exportation. Do you agree with Mr. Buckner?— A. Yes.

X Q. He also testified that this merchandise could not be used for anything other than connecting chains. Do you agree with him?— A. Yes, I do.

He also testified that the imported article had not been worked on by a machinist prior to exportation, but was worked on after importation to make a completed article, and that the component of the article was an alloy steel.

Counsel for the plaintiff contends that the additional evidence taken in this case brings the merchandise favorably within the holding of the case of *Schlossmann* v. *United States*, T. D. 12814 (G. A. 1410). In the *Schlossmann* case, *supra*, after quoting Webster's definition of "casting" as "that which is cast in a mold * * * as a casting in iron," this court said:

* * * The trade definition of a casting is the same as that of Webster, but commercially a casting does not lose its designation as a casting even when its gates and other excrescences have been chipped off and when it has been cleaned, pickled, or rumbled. In such a condition it is bought, sold, and universally known in trade as a casting. But when a product of the foundry has been finished, or fitted by a machinist into an implement, machine, or part of a machine, it is no longer known technically, popularly, or commercially as a casting, but enters into another class of manufactures of iron.

While it is true that the imported articles had not been fitted by a machinist into a machine or part of a machine, it is equally true that it was never intended to be so fitted, the testimony being that it had been brought to a manufactured condition for use exclusively as anchor chain connecting links, and that is the only use to which the record shows it was ever put. By a manufacturing process the imported merchandise had been made up into a specific article.

It is true that the provision in paragraph 304 for "* * * all descriptions and shapes of dry sand, loam, or iron molded steel castings," is a broad provision, but in our opinion this provision was never intended to include molded steel castings which, by a manufacturing process, had been made up into a specific article for use exclusively as anchor chain connecting links. The same statement applies with equal force to the instant merchandise and the provision for "* * * steel not specially provided for" in said paragraph 304.

As stated by our appellate court in *United States* v. *Frank*, 15 Ct. Cust. Appls. 97:

Our conclusion is, based upon the language of paragraph 304 and upon these authorities, that said paragraph was intended to refer to materials for further manufacturing processes and not to completely manufactured products like the steel piling involved here.

For the reasons heretofore stated all claims of the plaintiff are overruled and judgment will be rendered affirming the classification of the collector.